So the concern in this case is that the state's prime witness, their forewitness, was an attorney who was actually a hearing officer for the ARDC and that attorney that was a hearing officer for the ARDC testified that my client had falsely itemized her income as an employee for that witness. And what came out through the ARDC proceedings was that that witness actually falsified his own tax returns, committed fraud and deceit relative to his tax returns. This was all after the criminal trial. And he actually, in terms of the sum of money that was different, the sum of money before the state court that was at issue was about $68,000, but ultimately was determined before the ARDC was $90,000 was miscategorized. So the new evidence here was there was a $28,000 difference. So let me back up a little bit and put some meat on that. The testimony that came before the court, the criminal case, was that my client as an employee self-categorized her own documents unilaterally, had no authority from her employer, Mr. Rogazio, and to the tune of over a several year time period, $60,000 plus. Ultimately, through cross-examination, it came out to be there was about $3,500 that wasn't issued. The court or the state's attorney asked Mr. Rogazio in a pretty cursory fashion, let me show you these bills, let me show you how these items were categorized, is this the stuff you're talking about? He said, yeah, something along those lines. $3,500. And ultimately, what came out through the ARDC proceedings, and part of it came out during the criminal trial as well, was that there was a wholesale approach, an actual procedure undertaken by Mr. Rogazio to not properly report the income of three of his employees. I'm sorry, a total of four employees. So he was suspended for that, and it was a clear finding. And during the criminal trial, what was evident is that there was for sure two employees, my client and another gentleman who was working more on a part-time basis, who received income in the form of salary and in the form of expenses. The expenses would not be reimbursed. I'm sorry, the expenses would not be a taxable item. And so there was another gentleman as well, Mr. Marcellus, who was a part-time employee who was also paid as expenses. So the result of all this was, if you pay an employee as an expense, there's less cost to the employer relative to tax ramifications. Well, he was treating them as independent contractors, arguably, but he was defending himself for the IRS. Well, he couldn't call my client an independent contractor. That would be impossible. Another gentleman, perhaps, but the ARDC found that that was an incorrect way of categorizing it. My client was clearly a full-time employee, worked there all the time. Well, the ARDC's categorization doesn't matter to the IRS. Correct, but at no time did he argue, nor would it be legitimate to argue. He would have had another issue before the ARDC if he argued that my client was an independent contractor. For example, she worked for him for many years, since 2004, and the extent of her work was significant. I mean, she went from picking up his laundry to doing every work chore at the office and many personal endeavors. And there's no question that there was no issue relative to, you know, what was the source of her means at work, whether or not she was working at all. But she's not charged with any of that. She's convicted of what? Theft by deception. Theft by deception for the activity of doing what? For receiving, instead of, that she categorized her income from the office, she had the capacity to self-categorize. She coded her money that she received as income, part of it, part of her money that she received as income, as an expense. Therefore, she would not receive it as income, and Mr. Ragazio would not receive it as income. Would not have it be declared to the government as income. So at the end of the day, let's say, for example, total income for a particular year was, to round it off, let's just say $50,000. $10,000 will set apart as a reimbursable office expense. For my client, it was discerned as being an expense, an office expense, and not, quote-unquote, salary. Therefore, my client would not have the tax obligations, and Mr. Ragazio would not have the tax. She's charged with theft by deception using a credit card for personal reasons, right? Yes. That's the charge, isn't it? Yes. What does all this other have to do with it? It has to do with the motivation of Mr. Ragazio to do what he did. What happened before the ARDC and what their ultimate conclusion was exactly what I just stated, that a total of four employees were given a salary, what should traditionally be a salary, and it was called an office expense. And that was discerned through looking at his tax returns. So you have a theory, in other words, that what – was there an example in the indictments of what activities your client actually did that were criminal? What the charging instrument and the allegations before the criminal court were specific use of a credit card. And so the argument was that she took the credit card for personal expenses and the credit card was an office credit card and used it for her own personal items and that that was unauthorized. What her testimony was, was no, it wasn't unauthorized. We had specific meetings, Mr. Ragazio and I had specific meetings. He told me I could do this. It was a defense. But the act, the criminal act was, just as you said, taking a credit card, an office credit card? Yes. And buying personal items with it. Correct. Okay. The only – the star witness as to that fact was Mr. Ragazio. Correct. He was the – no testimony from Mr. Ragazio, no conviction. The fact that Mr. Ragazio paid many other employees in the same fashion never came out to the court. The fact that the ARDC found – He gave them office credit cards. He paid them through the use of – as I understand, all of the payments were through the use of checks to them for the purpose of – so I understand your distinction – the checks to them for the purpose of expensing their – expensing or paying the person as an independent contractor, I guess you could say, as opposed to – The testimony of the ARDC about the way he ran his office was that the secretary would write a check off of the office account, probably, and give the check to an employee or however you want to characterize them, and then she would book it as an office expense. There would be absolutely no payroll taxes taken out with that or whatever. Correct. But that isn't what she's charged with, is it? I mean, she's convicted of it? Well, I think that it's pretty similar to being one and the same because at the end of the day, what happens is what happens with – so the testimony before the criminal court was that my client would meet with Mr. Ragazio, so it's a credibility decision as to Mr. Ragazio and my client. Yeah, it's basically, here's my explanation, my story. Mr. Ragazio testified she had no authorization to use an office credit card to take and get personal items or whatever. And that they would meet. And when they met, they'd go over the items, the expenditures, and then Ragazio would say, you can declare that one as an expense, don't worry about it, that sort of deal. That's not far afield from paying somebody – paying a salaried employee or a person who should receive a traditional salary as an expense. So it's the same sort of expense concept as it relates to how information is submitted to the IRS. And the distinction here, as you pointed out, it has to do with the use of a credit card. And that, with regards to Mr. Ragazio's behavior before the ARDC or their conduct, they found that he committed fraud and he committed deceit. Those are two big words. Fraud and deceit would be profound impeachment opportunities for any criminal defense attorney. And if there is a wholesale procedure, office-established procedure of committing fraud and deceit, when filling out these government forms and filling out tax documents – Does this go to the post-conviction petition on ineffective assistance counsel, is that what you're going to do? Yes, I think it does. That specific argument that I made would be used – I mean, it sort of depends upon how the court plays it all out, actually. But clearly, as ineffective assistance counsel, Mr. Haney's failure to secure the tax returns, which the ARDC showed a heck of a lot, could have been used for the purpose of discerning a pattern of practice and office-established procedure for many, many, many years, contrary to the court's finding, for many, many years of committing fraud upon the government. The total amount was about $90,000. And the distinction between what came into evidence and what was established through the ARDC was about $28,000 different. $28,000 different. The amount that was issued in the criminal trial was $3,500. So imagine the plethora of opportunity for a cross-examination with a witness who was an ARDC hearing officer. And I mean, I don't know what else to say other than that. It would be, I guess, a fun opportunity to cross-examine a witness in that regard. Going to his credibility. Yes. So the other, what I'd like to itemize factually, because this case kind of has a lot of facts, and I kind of want to get all the facts in, and then I think the court can discern, unless the court has questions about how it plays out procedurally in this case. I'm sorry, with regards to this scenario. What I want to point out is what the new evidence is. So the new evidence is, number one, an ARDC finding of fraud and deceit. Those are admissible pursuant to 608B. Those occurred clearly afterwards. $20,000 of new found corrupt practices by Mr. Rogazio. A specific statement by Mr. Rogazio to his bookkeeper with regards to how it is that money should be handled relative to my client. In other words, should it be considered an expense, should it be considered income, that sort of deal. And when the bookkeeper brought it to Mr. Rogazio's attention as to how the bookkeeper should be handled, the bookkeeper says, do whatever my client wants. Do whatever she wants. Those are the words. That's what was stated before the ARDC. And in that regard, do whatever she wants shows authority. I have permission to do this, not the absence of authority. So the issue is exactly what your Honor pointed out. Use of the credit card. Was it with authority? Was it not without authority? At the end of the day, when we expense everything and look at it, you know, at the end of the day, we're looking at this. We're submitting quarterly. We're making quarterly submissions. We're making annual submissions. How is it analyzed? He's the ultimate decision maker, him and his bookkeeper slash accountant. And when she asks him the question, how do I look at all this? What do I do? Do I consider it to be an office expense, et cetera? The answer was, do whatever you want. The do whatever you want phrase specifically came out of the ARDC finding. That was new information. Do whatever you want was directed to whom? So it went like this. The bookkeeper is Eve? Yes. The bookkeeper asks Mr. Ragazio, what should I do with this categorization of income? Ragazio says, I'm sorry, the bookkeeper says, well, this is what the defendant, the accountant, told me to do. Miss Smith. Miss Smith. Ragazio says, do whatever she wants. So your argument is that he is giving authority to Miss Smith. Yes. And if you look back now at the criminal trial, she says, I met with him. We went over it. And when he went over it, he would tell me what's an expense, what's income. Ragazio said, no, that didn't happen. She said, it did happen. And here we have the testimony from the bookkeeper, do whatever she wants. It shows not only the trust that Mr. Ragazio had in my client, but also authority. Counselor, you have two minutes. Is that for the entirety of the argument or reservation for the? This argument. You have five more minutes for reply. Thank you. There's another employee, Cindy Buell, who, if his full set of tax returns was secured before the trial, between 2012 and 2013, she worked for Mr. Ragazio. She was paid the same way as my client as it relates to expensing or paid as an independent contractor, let's just say. The criminal trial, the judgment was August 22, 2013. She started working there in 2012. So if the tax returns were secured, then there would have been another employee. So then there would have been a total of three employees. My client, Mr. Marsalis, and Ms. Buell. A total of three employees would have been available as information to show that this is a procedure that Mr. Ragazio undertakes relative to his employees. After the hearing, after the trial, after sentencing, then there was another employee. That was final for the ARDC hearings. There was another employee who was treated the same. And by the same, what I mean is paid as an independent contractor, which is really an employee. So a total of four people besides my client. I'd like to reserve the rest for rebuttal. Thank you. Thank you, Mr. Horwitz. Ms. Brooks?  May it please the Court. My name is Allison Paige Brooks. I appear on behalf of the people. With respect to the defense claim of ineffective assistance to counsel, the defendant does not recognize that specific act impeachment is not permitted in Illinois. So the claim that a fraud and deceit finding from the ARDC, where the tax returns that they could have been obtained contained false statements to the government, for example, unless they're otherwise relevant to the proceeding, it is not admissible to show, through impeachment, that a witness had performed specific acts of untruthfulness, of which this would constitute, under the defendant's theory, and is not admissible in Illinois because there is no specific act impeachment. Well, you said unless otherwise relevant? Well, if the defendant lied about, or I'm sorry, if a witness lied about a fact that is relevant to the proceeding, then that is a subject of, like, a prior inconsistent statement that would be admissible. However, if the defendant had engaged, I'm sorry, if a witness had engaged in fraudulent conduct unrelated to the proceedings, for example, they're saying that he deducted taxes related to other employees other than the defendant, for example, to say if that's fraudulent, for example, that doesn't involve this case. That's not, to say that he engaged in a fraudulent activity unrelated to the case is not admissible impeachment. I thought I understood opposing counsel, maybe I was confused about this, that the act of consulting with the defendant regarding permissible and impermissible expensing, okay, was really what came out in the ARDC proceedings and that that would be relevant to his denial in the trial that he never did consult with her. Well, my understanding of the ARDC was that there was not something specific to the credit card consultation that that was more directed the do whatever she wants line. That pertains solely to the payments, the periodic payments that were without tax withholding that came through the booking system. But at trial, did Mr. Ragazzo testify he never consulted with or conferred with the defendant? About which one? I'm sorry, Your Honor. Well, what she was charged with, Your Honor, the office credit card for personal benefit. Right, and so yes, he denied that in the trial that he consulted with her every month about the credit card statement. But the statement in the ARDC, the new evidence about doing whatever she wants was regarded to, the defendant finds out that Steve Marcellus is paid as an independent contractor without withholding and she asks Stephanie Heath to be treated the same way. So Heath then contacts Ragazzo, Ragazzo gets back to her and they're all doing this through some sort of messaging because she doesn't even work in the office except for maybe like one day a week. So then the replies to Heath from Ragazzo was do whatever she wants and this is about her specific request to be received payments which initially started, I think, at like 150 and later increased to like 418 and 518. These periodic payments had nothing to do with the credit card. The credit card was a separate deal and Ragazzo's testimony was that it was supposed to be only for small $25 to $50 amounts and she was supposed to make reimbursements. And she did mark on their reimbursements. And the defendant's claim in her testimony that she met with Ragazzo every month, they went through the statement, he told her what to write is thoroughly rebutted by the record that was already before the court because one of the exhibits, which was People's Exhibit No. 8 contains the phrase in her letter, her signature request, this is letter to Heath from the defendant. I itemize the Capital One bill for you each month while employed at the Ragazzo Law Office as to what the charges on my card were for so that you could post them in your bookkeeping system accordingly. So essentially she is admitted in a letter to Heath that she was informed by Heath and this is what she did, that she is the one who is itemizing it. And if you go to other itemizations on the credit card statement, it does not make sense that Ragazzo dictated it because she is making comments again in her own writing to Heath about what things were for, for like hunting licenses. She said something about doing some sort of background checks on some people that might have broken into Mark Ragazzo's house. There's other things on there that it seems like that she has to talk to Mark, for example, about it. Other things like the racing tickets, which were a large item, which were over $1,000 for each year. She put client entertainment expense per MWR, which is Ragazzo's initials, and maybe one time had like a smiley face on it. And his testimony was that he had only authorized, sort of after the fact, the charges of one of those racing tickets and he thought they would only be about $100 or $200. So he's very detached from this. He doesn't know any of the amounts until she goes on medical leave and then he eventually opens up the statement for himself and he had never seen since 2008 until 2012. He finally figures out how long this has been happening and what the amounts are and he was completely shocked. He calls the police. He totals this up because he has to go back and get all these statements. This is a man who was shocked over $3,500? Well, he figures out that it was over $20,000, they think, over four years that were what he believes were not paid. And this case actually, when it came down to it, the trial court didn't really have a problem with the credibility part of this because one of the major parts is that on many occasions, and I listed in my brief on pages five to six, the evidence showed there were at least almost a dozen times when she marked things as being for personal use on these statements and then never cut a check as she was supposed to per their arrangement. And these totaled over the $500 felony threshold in which she was convicted of the lesser included offense of the at least $500 felony theft. And this is not something that he would have been deducting on his taxes because this was stuff that she marked as being for personal use but then never paid. And that part of it was not in dispute and therefore when the judge says that it didn't really matter about credibility because whoever you believe, she took at least $500 and then he had to make the decision on the element of theft by deception which is whether she obtained control of this property by deception. And so she did take at least over $500 and that's even stuff that she marked as being for personal but then never paid for. And the idea that do whatever she wants is just to bring the evidence of the lax oversight that Ragazu had with trusting the defendant, his employee, a bookkeeper who wasn't even in the office except maybe one day a week and let his tax preparer file the tax returns and using stuff that was kicked out by the automated bookkeeping system. So yes, you let the bookkeeper categorize falsely as meals and entertainment for example things that would not then be fully deductible under the IRS laws that doesn't somehow serve his purpose because if he's categorizing a payment of like $518 as meals and entertainment then his tax account is not going to let him deduct that on his tax return at least if it's only at 50% for meals and entertainment. So that comes out I think in the ARDC where it says actually this didn't even make sense from a tax perspective because meals and entertainment is only 50% deductible. So this just shows that the scheme was there was no oversight like the defendant claims. The defendant was lax in trusting in the controls and the defendant took advantage of that and that's precisely what this theft by deception statute was supposed to punish because the defendant did take over $500 by deception and the new evidence, especially the remark to whatever she wants which has to do with something different which is these periodic payments, not the credit card statement there's nothing conclusive in here that shows that she would be likely to receive an acquittal on a retrial which is the standard for her collateral challenges. And with respect to ineffective assistance of counsel I think this was a summary dismissal so the standard is a lot lower because it is a summary dismissal but even then she has not even made an arguable showing of reasonable probability that if the tax returns had been subpoenaed by her trial counsel that she might have been acquitted because it didn't come down to the tax returns it didn't come down really to Ragazio's credibility the trial court said regardless of who you believe that she took over $500 and that was all in the documents it was all in the printouts and the exhibits and the judge didn't really even have to resolve this sort of contested credibility between Attorney Ragazio and the defendant regarding the conflicts in their testimony it didn't really need to be resolved. So the conviction could be had based on only the introduction and authentication of business records. In this case, part of that was that keeps indication in those records that the defendant did not pay back at least $500, it was a lot more than that of items on those credit card statements I think it was almost a dozen where she marked them as personal and never paid for them. The inference is that she is realizing that if she got away with one of them maybe that she could just keep not paying some of these checks just because maybe she can't afford it at the time there's evidence that she had the motive because of a tree crashing in her house and therefore she couldn't stay in her house and then she couldn't make her mortgage payments and there was question about whether Ragazio was representing her with the mortgage company but all that means that she is in financial trouble so she's got all the motive and then she realizes apparently the opportunity to take some of this money like to buy hunting licenses and racing tickets and the racing tickets, it got to be like she was buying 12 of them at the end and her explanation is that other people were doing things for Mark Ragazio not just her, like personal errands is the example that he was trying to help reward him so she has an answer for everything but the judge didn't find her answers to be satisfactory and the extra new information doesn't really change the fact that she never did provide satisfactory explanations when she thought she had an answer for everything and the judge wasn't buying it so it seems like this new information to try to go after the credibility of Mark Ragazio calling him an ARDC hearing officer like that somehow makes a difference without explaining how this would be admissible except a specific act of impeachment which isn't even possible in Illinois and some of this information just shows how lax the oversight was so for those reasons this judgment should be affirmed and entertain any other questions so let me understand this the business credit card was used to buy tickets for racing, is that correct? so the tickets were procured yes okay, so the testimonies, what happened to the tickets? except for 2012 which I think they're in the record maybe I think the 2012 ones were surrendered because once Ragazio makes a police report and another attorney gets involved and I think she gets, the defendant gets an attorney and I think there's some references now he wants those back because I think he wants to try to get a refund maybe so I think she actually surrenders those tickets in response to a request and she also gives this letter explaining how she had itemized all of these statements for all the time that she worked there I think when she started using personal expenses I think it was about 2008 she started working there earlier than that like 2004 but from 2008 to 2012 she was itemizing these on her own and then when she leaves the office  and takes an extended leave and at that point there's no one else there to open the mail except Mark Ragazio and he's shocked by what he sees and then they go back and investigate they obtain store receipts like one of these things was a fax machine and he puts on there yeah we have this same fax machine it's the same model but it's not the fax machine at the office so the defendant has a sister who had a dance studio and I think her husband might have been involved in some other business so she's obtaining all this office supplies on the office law firm credit card and these supplies are not showing up at the law office they're not being used at the law office presumably I mean some of these things were like lanyards for the dance studio and that went obviously to the sister's dance studio it had nothing to do with the law office so I think this was obviously theft and whatever she has in her other proceedings is not going to have made any difference thank you Mr. Horowitz in Roboto let me start with one quick question and that is was it the same judge that tried the case that heard the post-conviction matters? yes I'd like to read the finding of the heresy this is the last ultimate finding and I'm just going to read a portion of it so I apologize it is in my phone so it goes on and explains that he was licensed in 1981 suspended for 60 days that was state for a period of time for probation the finding was that he knowingly not lax he knowingly authorized his bookkeeper that's Heath to mischaracterize another employee's wages that's mine as expense reimbursement which was not taxable rather than income which was taxable and later directed his bookkeeper Heath to do the same for two other employees with the intent to hide a portion of the three employees' wages so that no taxes were withheld on the falsely categorized portion of their wages not lax the findings were that in 2007 relative to my client $8,200 $8,252 income was incorrectly coded as an expense in 2008 the number was $14,565 2009 the amount was $13,450 in 2010 the amount was $17,942 in 2011 the amount was $26,068 2012 it was $10,878 those are the figures those are the findings this is not a lax just a casual or I just trust you this is some fundamental this is an established procedure of Mr. Rogazio let me be clear about a potential retrial there's no way no way that a state's attorney would put Mr. Rogazio to testify again there's just no way it'd be so profoundly difficult to prosecute this case to Mr. Rogazio they're a star witness they're a core witness the man who had the conversations with my client to rebut did you authorize this? remember she met with him she said go ahead what would you say you've got the same trial judge who heard the evidence and convicted your client the first time and then you get this post-conviction petition and 214.01 and you throw all this out there and that judge says what can I do? that's why we have an appellate court I hear you and I don't want to say anything other than that's why we have an appellate court and this man was obviously a well-esteemed gentleman when he testified in front of before the court there was none of this none of these allegations no findings no nothing and so I'll leave it at that but I think that the obvious the testimonies or the evidence is pretty clear that there was a substantial profound impeachment substantial and profound office procedure that was not gone into and new evidence that was developed and so I hope that answers that component of the question the question is whether or not we can start the process and the court does not allow us to start the process which is a relatively low threshold and well what about the opposing counsel's argument that specific acts of impeachment is not recognized? 2004 case that she cited that the federal rules were adopted long after 2004 maybe three years ago and the federal rule is rule 608B and that provides for impeachment across examination where there is a state where there is a issue about truthfulness I'll pull it up if you like but when it relates to truthfulness the defendant if there is a prior statement for example by a if the statement is authoritative or has been stated by another so it can get as bad as if your neighbor said this that you're a liar that can be a subject of cross-examination but regardless here we have the eruditcy saying it so let's weigh and determine its weight or whether it could be admissible but here's a finding by an administrative body or an authoritative administrative body and rule 608B allows for it specifically across examination that's what it says so 2004 case that counsel cites to that will be contradicted by the adoption of the federal rules whether it's relevant here or not I don't know but what would the guy's motive be if this was all a sleight of hand stuff to dodge taxes what possible motive would a guy have to get the police involved to look at your business records and open these up to an investigation and slide them in just the way it did with the Penman program well I don't really answer the question about motive because the issue wasn't fully developed it wasn't fully developed at cross-examination I think the another question could be why didn't he instantaneously amend his tax returns why didn't he instantaneously look through his own misgivings or bad procedures to correct it all why did it wait until a criminal trial for there to be an ARDC investigation so I don't really answer that question I think that's a subject matter relative to motive of a witness that one would need to go into I just want to make one more answer relative to the specific act of impeachment this is not just is this person a liar this is core to the case this is a procedure an undertaking specifically relative to material testimony at trial so this isn't just one person over here in the woods says this guy's a liar and somehow or other relates to the case in the case the procedure undertaken by the defendant or the appellate and the complaining witness was they would go over the billing statements or the credit cards and they would discern if she says they would figure out is this an office expense is this income how do you want to handle it boss and boss says this is income this is an expense that's what boss says and now you have 7 years of $90,000 worth of expensing somebody the motive is to get to at least part of your question is not an exact answer but the motive is to reduce the cost of employing these individuals that would not be a specific act of impeachment if there's a question about which is it 608B that applies for a Supreme Court case that People v. Santos that the state argued thanks for your time Mr. Horowitz Ms. Brooks thank you also Mr. Maddox has spoken under the bias of written disposition he is